**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **MICHAEL R. POMPEO**, *et al*., <br><br> **Defendants.** | Civil Action No. 19-3324 (JEB) |

## <u>MEMORANDUM OPINION</u>

While few applaud the proliferation of paperwork in the modern bureaucracy, some have grown concerned over agencies' failures to maintain an adequate paper trail of their decisions. In this action, Plaintiffs — three non-profit organizations dedicated to encouraging government transparency — challenge the State Department and its Secretary's alleged policy and practice of not adequately creating and maintaining records of their activities in violation of the Federal Records Act. They also allege that the Department's shabby recordkeeping demonstrates Defendants' lack of effective controls over the agency's records program. To remedy these ills, Plaintiffs seek the court's declaration of the State Department's present failure to sustain an adequate records-management program and an injunction compelling Defendants to establish such a program going forward.

The Government now moves to dismiss, arguing that these FRA-predicated claims brought via the Administrative Procedure Act do not sufficiently state a claim for relief. Both sides agree that while a litigant may file suit under the APA to contest whether an agency's guidelines or policies comport with certain provisions of the FRA, she cannot seek relief for

individual acts of non-compliance with the Act.  As the Court concludes that Plaintiffs'

Complaint as currently framed falls into the latter category, it will grant the Motion to Dismiss.

Because Plaintiffs allege in their submissions that recently disclosed information will bolster

their pleadings, the Court will dismiss only the Complaint without jettisoning the full case,

thereby allowing Plaintiffs to bring an Amended Complaint should they so desire.

## I.      Background

The Court begins with the statutory scheme at issue before proceeding to the allegations

asserted in Plaintiffs' Complaint.

### A.   The Federal Records Act

The Federal Records Act of 1950 "governs the creation, management and disposal of

federal records."  Armstrong v. Bush, 924 F.2d 282, 284–85 (D.C. Cir. 1991).  To ensure

"[a]ccurate and complete documentation of the policies and transactions of the Federal

Government," while "preventing the creation of unnecessary records," 44 U.S.C. § 2902, the Act

dictates that agencies must "make and preserve records containing adequate and proper

documentation of the organization, functions, policies, decisions, procedures, and essential

transactions of the agency."  Id. § 3101.  The FRA ultimately ensures that agencies "strike a

balance 'between developing efficient and effective records management, and the substantive

need for Federal records.'"  Armstrong, 924 F.2d at 292 (quoting S. Rep. No. 94-1326, 94th

Cong., 2d Sess. 2 (1976)).

Agency heads and the Archivist of the United States play critical roles in implementing

the FRA.  The Act "authorizes the 'head of each Federal agency' to establish a 'records

management program' and to define the extent to which documents are 'appropriate for

preservation' as agency records.'" Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S. 136, 147 (1980) (quoting 44 U.S.C. § 2901, *et seq*.). The Archivist must "provide guidance and assistance" to the agencies, in part by creating general "standards, procedures, and guidelines with respect to records management." 44 U.S.C. § 2904. Pursuant to this authority, the Archivist has promulgated regulations detailing what types of records agencies must create and maintain, as well as the requirements for agency recordkeeping policies. See 36 C.F.R. §§ 1222.22–1222.34. Consistent with those regulations, the State Department has produced its own policies and procedures for records creation, maintenance, and destruction. See 5 Foreign Affairs Manual (FAM) 400 Records Management, http://fam.state.gov/Fam/FAM. aspx?ID=05FAM; 5 Foreign Affairs Handbook (FAH) 4 Records Management Handbook, http://fam.state.gov/Fam/FAM.aspx?ID=05FAH04.

If the Archivist makes a finding of agency noncompliance with the FRA, she must notify the offending agency, and, should it fail to "commence[]" "satisfactory corrective measures . . . within a reasonable time," she must "submit a written report of the matter to the President and the Congress." 44 U.S.C. § 2115. Despite the responsibilities the Archivist assumes, "the FRA understandably leaves the details of records management to the discretion of individual agency heads." Armstrong, 924 F.2d at 928.

B. Factual History

"Because [the] FRA is primarily directed at the preservation of federal records," much of the statute and the majority of the caselaw surrounding it, is devoted to its "disposal provisions." Citizens for Responsibility & Ethics in Wash. v. Pruitt, 319 F. Supp. 3d 252, 256 (D.D.C. 2018) (quoting Competitive Enterp. Inst. v. EPA, 67 F.Supp.3d 23, 26 (D.D.C. 2014)).

This case, conversely, implicates an agency's alleged failure to <u>create</u> records in contravention of the dictates of the FRA and its implementing regulations.

Plaintiffs are three non-profits with longstanding interests in public disclosure, particularly in the foreign-policy sphere. Citizens for Responsibility and Ethics in Washington (CREW) "uses a combination of litigation, advocacy, and public education" to advance its mission of "protecting the right of citizens to be informed about the activities of government officials." ECF No. 1 (Complaint), ¶ 8. The National Security Archive has similar aims but focuses its investigations and studies on matters relating to national security and international affairs. <u>Id.</u>, ¶ 11. Finally, the Society for Historians of American Foreign Relations is a professional society dedicated to the study of American foreign relations. <u>Id.</u>, ¶ 15. All three entities are frequent FOIA requesters that rely on the availability of documentary histories of the government's activities to fulfill their mandates. <u>Id.</u>, ¶¶ 18–20.

The Complaint alleges Defendants' noncompliance with the FRA's records-creation and -maintenance directives. In support of their claims, Plaintiffs state that members of the Department are participating in "off the books" "shadow diplomacy," guided by the President's personal attorney and aimed at promoting his personal interests abroad, principally in Ukraine. <u>Id.</u>, ¶¶ 52, 60, 67. For example, Plaintiffs highlight a call that included Ukrainian President Volodymyr Zelensky, multiple Ambassadors, and Energy Secretary Rick Perry, during which then–American Ambassador to the European Union, Gordon Sondland, directed other participants not to take notes. <u>Id.</u>, ¶ 52. The Complaint also alleges that Department officials use "private phones and an encrypted messenger app" to conduct official business without always ensuring that copies of those messages are saved and preserved. <u>Id.</u>, ¶¶ 60–62.

The pleadings detail several incidents involving the President and his senior advisors. Much of the Complaint focuses on the transcript of a call between the Presidents of the United States and Ukraine that the Administration attempted to shield from view, one of multiple foreign-policy-related documents that the White House has tried to withdraw from the public domain. Id., ¶¶ 41–44. The Complaint also describes a meeting between the President's advisor, son-in-law Jared Kushner, and the Crown Prince of Saudi Arabia, one that U.S. embassy staff was not "read in on." Id., ¶ 67. Finally, Kushner and another White House advisor, his wife Ivanka Trump, allegedly conduct official White House business via personal email accounts, along with, in Kushner's case, an encrypted messaging system. Id., ¶ 68.

Believing that the "conduct of Secretary Pompeo and the State Department . . . conflicts directly with their obligations under the FRA," id., ¶ 5, Plaintiffs filed suit on November 5, 2019, seeking declaratory and injunctive relief. Id., ¶¶ 1–4. They claim that Defendants have failed to establish and maintain an adequate records system as required by the FRA and therefore have acted in an arbitrary and capricious manner proscribed by the APA.

Count I alleges that Defendants have "followed a pattern and practice of affirmatively electing not to create and preserve records adequately documenting" the agency's "policies[,]" "decisions[,]" and "essential transactions." Id., ¶ 71. Count II posits that the "evidence of widespread noncompliance at the State Department with the agency's recordkeeping requirements" demonstrates that Defendants have failed to establish "effective controls over the agency's records program." Id., ¶ 78. Defendants now move to dismiss, arguing that the counts fail to state a claim.

## II.      Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true, and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56.

## III.     Analysis

The Court will begin with an overview of the caselaw concerning the reviewability of Plaintiffs' FRA claims brought under the APA and will then consider each of the counts in turn.

A.  Judicial Review

The FRA does not provide an express or implied cause of action, see Kissinger, 445 U.S. at 148, but in some circumstances, plaintiffs may use the APA to enforce compliance with the FRA.  See Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 11 (D.D.C. 2019).  In the seminal case on the subject, Armstrong v. Bush, our Circuit recognized two APA-based challenges that courts may entertain regarding the FRA: (1) a claim that an agency's "recordkeeping guidelines and directives do not adequately describe the material that must be retained as 'records,'" 924 F.2d at 293; and (2) a claim challenging the Archivist's or Attorney General's failure to take enforcement actions required by the Act.  Id. at 294–95; see also Pruitt, 319 F. Supp. 3d at 257 (describing Armstrong decision in more detail).  By contrast, the court held that "private litigants" may not sue directly "to enjoin agency actions in contravention of agency guidelines."  Armstrong, 924 F.2d at 294.  To permit such compliance-based claims, the Circuit explained, would impermissibly inject the court into the "details of record management," a task better left "to the discretion of agency heads."  Id. at 293.

As a result, according to Armstrong, courts may "review the adequacy of an agency's guidelines and directives" governing records destruction and retention, id. at 293–94, but they cannot entertain challenges to agency compliance with those guidelines in "specific factual contexts."  Competitive Enter. Inst., 67 F. Supp. 3d at 33 (describing Armstrong); see also Pruitt, 319 F. Supp. 3d at 258 ("[U]nder Armstrong, courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA . . . .").

While Armstrong squarely governs claims surrounding an agency's destruction of records, it was left to future courts to consider the decision's applicability to records-creation claims. In Pruitt, this Court applied Armstrong to a suit challenging the Environmental Protection Agency's alleged failure to create records in contravention of the FRA. See 310 F. Supp. 3d at 258–61. There, Plaintiffs' Complaint painted a stark picture of a pervasive "culture of secrecy" imposed by then–EPA Administrator Scott Pruitt. Id. at 255. Pruitt allegedly instructed EPA staff not to create any record of "major substantive matters," prohibited employees from taking notes or using phones during meetings, and even commissioned a nearly $25,000 soundproof "privacy booth" to facilitate his clandestine regime. Id.

Extending Armstrong's distinction between guidelines-based challenges and compliance-based challenges, the Court held that the Pruitt plaintiffs could bring suit under the APA in response to the defendants' policy and practice of violating the FRA provision governing records creation. Id. at 259–60; see also 44 U.S.C. § 3101 (agencies shall "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency"). The Court cautioned, however, that "[w]hile future plaintiffs may challenge the EPA's actions, in the aggregate, of refusing to create certain records, they may not demand judicial review of isolated acts allegedly in violation of § 3101." Pruitt, 319 F. Supp. 3d at 260; see also Competitive Enter. Inst., 67 F. Supp. 3d at 32 ("Armstrong I distinguished between reviewable challenges to an agency's record-keeping guidelines under the APA, and unreviewable challenges to the agency's day-to-day implementation of its guidelines.").

Finally, as in the FOIA context, policies and practices such as those challenged in Pruitt, may be "informal, rather than articulated in regulations or an official statement of policy."

Khine v. DHS, 334 F. Supp. 3d 324, 332 (D.D.C. 2018), aff'd, 943 F.3d 959 (D.C. Cir. 2019)

(quoting Payne Enters., Inc. v. United States, 837 F.2d 486, 491 (D.C. Cir. 1988)).  Indeed, in

Armstrong itself, the D.C. Circuit directed the district court on remand, when conducting its

analysis of the agency's guidelines regarding records destruction, to consider the agency's

"informal, supplementary guidance" including "guidance provided in staff meetings in which

recordkeeping responsibilities were discussed."  Armstrong, 924 F.2d at 297.

    This canvassing of the relevant terrain illuminates the narrow issues remaining in dispute.

Armstrong and Pruitt clarify that a Court can review an APA claim challenging an agency's

informal policy or practice of violating certain directives of the FRA, including the Act's

records-creation and -destruction mandates, but it cannot address individual acts of

noncompliance.  See also Citizens for Responsibility & Ethics in Wash. v. DHS, 387 F. Supp. 3d

33, 53 (D.D.C. 2019) ("[Pruitt] recognized . . . a challenge to the EPA's unofficial policy of

refusing to create records.").  The question for the instant case, then, is whether the Complaint

falls into the former or the latter category.

   B.  FRA Claims

       1.  *Count I*

    Count I alleges that Defendants have "followed a pattern and practice of affirmatively

electing not to create and preserve records" and of "direct[ing] other State Department

employees not to create and preserve records" in violation of the FRA and its implementing

regulations.  See Compl., ¶¶ 71–72.  According to Defendants, however, Count I "bootstrap[s] an

impermissible 'compliance-based claim' . . . into a 'guidelines-based claim.'"  ECF No. 13 (Def.

MTD) at 12 (quoting Competitive Enterp. Inst, 67 F. Supp. 3d at 33).  Plaintiffs counter that their

Complaint "meets the pleading requirements for a policy and [practice] claim" because it

identifies a "challenged policy and practice" and provides factual support for its existence, including details concerning the Department's conducting of an undocumented "shadow diplomacy" "through a secret, alternative channel."  ECF No. 17 (Pl. Opp.) at 20 (quoting Compl., ¶¶ 1, 4).

Defendants have the better of this argument.  As currently framed, Plaintiffs' wide-ranging Complaint merely describes Defendants' isolated violations of the guidelines governing records creation rather than an agency-wide policy that violates the FRA.  While guidance in the FRA domain is scarce, FOIA doctrine is rife with considerations of "policy or practice" challenges.  In those cases, a plaintiff can bring suit under FOIA if he plausibly alleges "that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'"  Muttitt v. Dep't of State, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting Payne Enters., 837 F.2d at 491).  The allegation of a "single . . . violation [is] insufficient"; rather, there must be "ongoing" persistent violations.  Scudder v. CIA, 281 F. Supp. 3d 124, 129 (D.D.C. 2017); see also Judicial Watch, Inc. v. DHS, 895 F.3d 770, 780 (D.C. Cir. 2018) ("[P]laintiff must allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements . . . .").  Only then could a court justifiably find the existence of an actual policy or practice.

The pleadings here do not meet that standard.  First, much of the Complaint contains allegations regarding officials who are either not members of the State Department or are not subject to the FRA at all.  Statements concerning the President and his senior advisors in the White House litter the pleadings, but these actors are generally governed by the Presidential Records Act, see 44 U.S.C. § 2203, which "precludes judicial review of the President's recordkeeping practices and decisions."  Armstrong, 924 F.2d at 291.  For example, Plaintiffs

state that Department of Defense officials "were asked to send back transcripts of calls to the

White House after [President] Trump['s] aides grew worried they could be disclosed."  Compl.,

¶ 43.  The President's aides' attempts to secure a transcript from the Department of Defense do

not implicate the adequacy of the State Department's recordkeeping policies.

 To take another example, the Complaint alleges that senior White House advisors Jared

Kushner and Ivanka Trump conduct official business, including foreign-policy-related

discussions, in secret and often via their personal email accounts.  Id., ¶¶ 67–68.  Again, while

concerning, this activity does not demonstrate that State Department officials have adopted a

policy of declining to create or failing to adequately maintain records.  Finally, that the U.S.

embassy in Tehran was "largely left in the dark" on the substance of Kushner's meeting with the

Crown Prince of Saudi Arabia also does not involve the State Department's recordkeeping

practices.  Id., ¶ 67.  Indeed, because it was "left in the dark," the Department does not appear to

have had the opportunity to create a record on the subject at all.

 Stripped to its core, then, the Complaint alleges an Administration-wide recordkeeping

failure concerning an aspect of its Ukraine policy.  To the extent that a few isolated actions

involved some State Department personnel, Plaintiffs cannot transform an allegedly brazen

compliance violation into a "policy or practice" claim simply by slapping the "policy or practice"

label on it.  See Competitive Enter. Inst, 67 F. Supp. 3d at 33 ("[Plaintiff] cannot challenge

EPA's decision to destroy text messages by casting its claim as a challenge to an illusory record-

keeping policy.  While the form of [plaintiff's] claim sounds in a cognizable APA claim, the

substance of its allegations constitutes a challenge to EPA's records disposal decisions.").

 While Plaintiffs may be justifiably displeased by the Administration's efforts at

concealment, their allegations are a far cry from those found sufficient to state a

policy-and-practice claim in Pruitt, where the EPA Administrator allegedly directed superiors

"not to create a written record about major substantive matters and, during meetings, prohibited

employees from using cell phones or taking notes," and constructed a "soundproof privacy

booth" in which to conduct phone calls.  See 319 F. Supp. 3d at 255 (internal quotation marks

omitted).  The Complaint does not allege nearly the same sort of systemic non-compliance, and

certainly not a policy orchestrated from the highest levels.  Plaintiffs claim that during one phone

call participants were directed by an Ambassador not to take notes, part of a potentially larger

effort (that Secretary Pompeo was "aware of") that included using an encrypted messenger

application to shield an aspect of the President's Ukraine policy from public view.  See Compl.,

¶ 5.  That is simply insufficient to clear the policy-and-practice bar.

    This case is more akin to a different decision recently tendered in this District, where a

sister court concluded that a litigant could not bring a claim that "DHS violated the FRA by

failing to create records sufficient to link separated children to adults with whom they were

apprehended."  Citizens, 387 F. Supp. 3d at 50.  There, as here, the plaintiffs challenged the

agency's "deficient compliance with [the FRA] with regards to some of the records the agency

creates," rather than a "DHS policy, official or unofficial, setting agency-wide compliance with

the FRA."  Id. at 53.  Because the FRA prohibits "any judicial assessment of agency compliance

in specific factual contexts by establishing a detailed enforcement scheme for alleged

violations," Competitive Enter. Inst., 67 F. Supp. 3d at 33, Count I cannot move past the

pleading stage.

### 2. Count II

    Count II asserts that the Department's recordkeeping guidelines are inadequate because

despite "evidence of widespread non-compliance," the agency delegates "to each . . . employee

the apparently unchecked discretion to 'create and preserve records.'"  Compl., ¶ 78.  According

to Plaintiffs, this "lack of effective controls over the agency's records program," "particularly

with respect to the use of private phones and email accounts and encrypted messenger apps,"

violates the FRA.  Id.

      Count II therefore contests the adequacy of the State Department's policy regarding

records preservation — most notably, guidelines pertaining to modern technology — which is

the sort of claim the D.C. Circuit has determined courts can consider via the APA.  See Judicial

Watch, Inc. v. FBI, No. 18-2316, 2019 WL 4194501, at *6 (D.D.C. Sept. 4, 2019) ("Plaintiff

challenges the adequacy of Defendant's official Policy Guidelines with respect to electronic

records other than email.  This is just the sort of reviewable challenge to an agency's

recordkeeping guidelines that Armstrong permits.").

      Count II, however, fails to state a claim for such a policy challenge.  To survive

Defendants' Motion to Dismiss, Plaintiffs must allege facts that could plausibly lead the Court to

find the contested policy "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.'"  Id. at *9 (quoting 5 U.S.C. § 706(2)(A)).  First, because Plaintiffs have

not alleged "widespread" noncompliance by Defendants' employees with Department guidelines,

see Compl., ¶ 78, they cannot sustain a claim that those guidelines are inadequate on the basis of

such noncompliance.  Second, in criticizing the Department's delegation of compliance

responsibility to individual employees, Plaintiffs never mention that those same guidelines, *inter

alia*, assign responsibility for coordinating employee compliance to specific personnel within

each Department component.  See, e.g., 5 FAM 414.4(b) (assigning role within Department

bureaus to "bureau records coordinator"), id. at 414.5(b) (assigning role within Department

13

diplomatic posts to "information management officer").  The guidelines, on their face, thus do not grant individual employees "unchecked discretion" to comply (or not) with the FRA.

Finally, while Plaintiffs vaguely allude to the Department's polices with respect to the "use of private phones and email accounts and encrypted messenger apps," the Complaint does not describe what those policies are, and the incidents it documents concerning this technology almost entirely involve actors outside of the State Department.  Cf. MTD at 7 (describing State Department's interim updates to FRA guidance regarding encrypted messaging systems).

In sum, "[w]ithout more precise factual allegations that highlight which particular deficiencies make the challenge to the [agency's] policy inadequate, Plaintiff[s'] claims amount to conclusory allegations that the [agency] failed to establish and maintain a recordkeeping program that provides effective controls."  Judicial Watch, 2019 WL 4194501, at *9 (internal quotation marks omitted); see also Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66–67 (2004) (courts are not empowered to enter general orders compelling compliance with broad statutory mandates because it would "task . . . the supervising court, rather than the agency, to work out compliance with the broad statutory mandate, injecting the judge into day-to-day agency management").

*          *          *

Despite the Complaint's defects, the Court does not foreclose the possibility that Plaintiffs might be able to state a claim for relief.  Their Opposition, for example, includes allegations of more recent violations of the Act perpetrated by State Department officials.  See, e.g., Pl. Opp. at 18 (alleging undocumented meeting between the Secretary of State and Russian foreign minister); cf. Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("[D]ismissal with prejudice is warranted only when a trial court determines that the allegation of other facts

14

consistent with the challenged pleading could not possible cure the deficiency.") (internal

quotation marks omitted) (quoting <u>Jarrell v. UPS</u>, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).  As a

result, the Court will dismiss only the Complaint and not the entire case.  <u>See</u> <u>Ciralsky v. CIA</u>,

355 F.3d 661, 666 (D.C. Cir. 2004) ("The dismissal without prejudice of a <u>complaint</u> [is] not

final . . . because the plaintiff is free to amend his pleading and continue the litigation[;] . . .

dismissal without prejudice of an <u>action</u> (or 'case'), by contrast" ends the suit and "is final.").

Plaintiffs may thus file an Amended Complaint if they can retool their allegations to avoid the

pitfalls discussed herein.

**IV.    Conclusion**

　　For the foregoing reasons the Court will grant Defendants' Motion to Dismiss.  A

separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>April 3, 2020</u>