UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON, *et al.*,

    Plaintiffs,

        v.

MICHAEL R. POMPEO, *et al.*,

    Defendants.

Civil Action No. 19-3324 (JEB)

## <u>MEMORANDUM OPINION</u>

Responding to a perceived lack of government transparency, non-profit Plaintiffs in this case contend that the State Department and its Secretary have adopted a policy and practice of not adequately creating records of their activities in violation of the Federal Records Act. They similarly allege that Defendants have not implemented effective controls over the agency's records program. Despite Plaintiffs' understandable displeasure at the Administration's efforts at concealment, this Court previously determined that neither of their original asserted counts stated a valid claim for relief. It nonetheless offered them a second bite at the apple, permitting them to augment their claims in the form of a revised pleading containing additional factual assertions.

Seizing the opportunity, Plaintiffs now return to court with a new Complaint in tow, which the Government once more moves to dismiss. The Court ultimately finds that this second effort to pass the pleading hurdle does not warrant a different outcome from the first. That is because Plaintiffs' Amended Complaint, although featuring new allegations, continues to suffer from the same fundamental flaw as its predecessor — namely, it protests individual acts of noncompliance with the FRA, rather than describing agency policies or guidelines that run afoul

1

of the statute, as required for an FRA-predicated claim brought via the Administrative Procedure

Act.  The Court, accordingly, will grant the Motion to Dismiss.

I.     **Background**

The Court begins with a brief overview of the relevant legal background before turning to

the history of this litigation, which includes summaries of both its prior Opinion and Plaintiffs'

Amended Complaint.

A.  Legal Background

The Court has previously summarized the statutory background relevant to this case.  See

Citizens for Responsibility & Ethics in Wash. v. Pompeo, No. 19-3324, 2020 WL 1667638, at

*1–2 (D.D.C. Apr. 3, 2020).  Stated briefly, the Federal Records Act of 1950 dictates that federal

agencies must "make and preserve records containing adequate and proper documentation of the

organization, functions, policies, decisions, procedures, and essential transactions of the agency."

44 U.S.C. § 3101.  The Act ensures the "[a]ccurate and complete documentation of the policies

and transactions of the Federal Government," while simultaneously "prevent[ing] the creation of

unnecessary records."  Id. § 2902.  It thereby requires agencies to "strike a balance 'between

developing efficient and effective records management, and the substantive need for Federal

records.'"  Armstrong v. Bush, 924 F.2d 282, 292 (D.C. Cir. 1991) (quoting S. Rep. No. 94-

1326, 94th Cong., 2d Sess. 2 (1976)).

The FRA "authorizes the 'head of each Federal agency' to establish a 'records

management program' and to define the extent to which documents are 'appropriate for

preservation' as agency records."  Kissinger v. Reporters Comm. for Freedom of Press, 445 U.S.

136, 147 (1980) (quoting 44 U.S.C. § 2901, et seq.).  Pursuant to statutory authority, see 44

U.S.C. § 2904, the Archivist of the United States has promulgated regulations detailing various

types of records agencies must create and maintain, as well as the requirements for agency

recordkeeping policies.  See 36 C.F.R. §§ 1222.22–1222.34.  Consistent with those regulations,

the State Department has produced its own policies and procedures for records creation,

maintenance, and destruction.  See 5 Foreign Affairs Manual (FAM) 400 Records Management,

https://fam.state.gov/Fam/FAM.aspx?ID=05FAM; 5 Foreign Affairs Handbook (FAH) 4

Records Management Handbook, https://fam.state.gov/Fam/FAM.aspx?ID=05FAH04.  While

the Archivist assumes certain responsibilities for ensuring agency compliance with the FRA, the

Act "understandably leaves the details of records management to the discretion of individual

agency heads."  Armstrong, 924 F.2d at 923.

    B.  Procedural History

        1.  *Dismissal of Initial Complaint*

The Court's prior Opinion dismissing Plaintiffs' first Complaint sets the stage for the

present discussion.  Not only does their Amended Complaint draw heavily from the factual

matter underlying that initial pleading, but the same core questions that dominated this Court's

initial Opinion feature prominently in its resolution of the current Motion.  A summary of the

factual allegations in the first Complaint, along with the legal framework the Court invoked to

assess and ultimately dismiss it, thus proves helpful here.

On November 5, 2019, three non-profit organizations — Citizens for Responsibility and

Ethics in Washington, the National Security Archive, and the Society for Historians of American

Foreign Relations — filed suit against the State Department and Secretary Pompeo.  See ECF

No. 1 (Complaint).  These Plaintiffs, which have longstanding interests in government

transparency and rely heavily on the availability of documentary histories of the government's

activities, contended that Defendants had engaged in conduct that "conflict[ed] directly" with the

FRA's records-creation and -maintenance directives.  Id., ¶¶ 5, 8–18.  Specifically, they alleged that members of the Department, with Pompeo's "knowledge," were participating in "off-the-books" "shadow diplomacy" aimed at promoting the President's personal interests in Ukraine. Id., ¶¶ 5, 52, 56, 60, 67.  For example, Plaintiffs pointed to a call between Ukrainian President Volodymyr Zelensky and various American officials, during which then-American Ambassador to the European Union, Gordon Sondland, directed other participants not to take notes.  Id., ¶ 52. The Complaint also alleged that Department officials used "personal phones and an encrypted messenger app" to conduct official business without always ensuring that copies of those messages are saved and preserved.  Id., ¶¶ 60–62.  Finally, Plaintiffs detailed an array of incidents involving the President and his senior advisors, including the White House's attempt to shield from view the transcript of a call between the Presidents of the United States and Ukraine that Pompeo listened in on, id., ¶¶ 41–44, 65, and a meeting between the President's advisor, son-in-law Jared Kushner, and the Crown Prince of Saudi Arabia that U.S. embassy staff was "not read in on."  Id., ¶ 67.

With these allegations highlighted, Plaintiffs contended that Defendants had flouted the FRA's requirements.  They first claimed that Defendants had established an affirmative practice "not to create and preserve records adequately documenting" the Department's activities.  Id., ¶ 71.  In a second count, they asserted that Defendants had neglected to establish "effective controls" over the Department's records program, once again in violation of the FRA.  Id., ¶ 78. Defendants moved to dismiss for failure to state a claim.  See ECF No. 13-1 at 2.

The Court began by describing the types of legal claims regarding the FRA that it had the power to review.  See Pompeo, 2020 WL 1667638, at *3–4.  While the FRA does not provide a cause of action, see Kissinger, 445 U.S. at 148, in certain circumstances, plaintiffs may use the

APA to enforce compliance with the FRA.  Citizens for Responsibility & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 11 (D.D.C. 2019).  The Court recounted the holding of Armstrong v. Bush, where the D.C. Circuit recognized two types of APA-based challenges that courts may entertain: 1) a claim that an agency's "'recordkeeping guidelines and directives do not adequately describe the material that must be retained as records'"; and 2) a claim "challenging the Archivist's or Attorney General's failure to take enforcement actions required by the Act." Pompeo, 2020 WL 1667638, at *3 (citing Armstrong, 924 F.2d at 293–95); see also Citizens for Responsibility & Ethics in Wash. v. Pruitt, 319 F. Supp. 3d 252, 257 (D.D.C. 2018).  Private litigants may not, by contrast, sue directly "to enjoin agency actions in contravention of agency guidelines."  Armstrong, 924 F.2d at 294.  As a result, the Court summarized, it "may 'review the adequacy of an agency's guidelines and directives' governing records destruction and retention," Pompeo, 2020 WL 1667638, at *4 (quoting Armstrong, 924 F.2d at 293–94), but it "cannot entertain challenges to agency compliance with those guidelines in 'specific factual contexts.'"  Id. (quoting Competitive Enter. Inst. v. EPA, 67 F. Supp. 3d 23, 33 (D.D.C. 2014)). To permit the latter compliance-based claims would "impermissibly inject the court into the 'details of record management,' a task better left 'to the discretion of agency heads.'"  Id. at *3 (quoting Armstrong, 924 F.2d at 293).

While Armstrong governed claims surrounding an agency's destruction of records, the Court explained that it had previously extended the decision's distinction between guidelines-based challenges and compliance-based challenges to records-creation claims.  Id. at *4. Specifically, this Court held in Pruitt that plaintiffs could indeed bring suit under the APA to challenge an agency's policy and practice of violating the FRA's records-creation requirements. See 319 F. Supp. 3d at 259–60.  Such "policies and practices," the Court clarified, "may be

'informal, rather than articulated in regulations or an official statement of policy.'" Pompeo, 2020 WL 1667638, at *4 (quoting Khine v. DHS, 334 F. Supp. 3d 324, 332 (D.D.C. 2018), aff'd, 943 F.3d 959 (D.C. Cir. 2019)).  Critically, however, the Court cautioned that "[w]hile future plaintiffs may challenge [an agency's] actions, in the aggregate, of refusing to create certain records, they may not demand judicial review of isolated acts allegedly in violation of § 3101." Id. (quoting Pruitt, 319 F. Supp. 3d at 260) (first alteration in original); see also Competitive Enter. Inst., 67 F. Supp. 3d at 32 (similar).  In sum, the Court explained, it could "review an APA claim challenging an agency's informal policy or practice of violating certain directives of the FRA, including the Act's records-creation and -destruction mandates, but it [could not] address individual acts of noncompliance." Pompeo, 2020 WL 1667638, at *4.

Applying this legal framework, the Court granted Defendants' Motion to Dismiss in its entirety.  With regard to Count I, the Court held that "Plaintiffs' wide-ranging Complaint merely describes Defendants' isolated violations of the guidelines governing records creation rather than an agency-wide policy that violates the FRA." Id. at *5 (first emphasis added).  Although Plaintiffs had styled their claim as a challenge to the State Department's "policy or practice" of violating the FRA by declining to create and preserve records, the Court found that the substance of their allegations amounted only to "a few isolated actions" involving some Department personnel.  Id.  Far from alleging "systemic non-compliance" or "a policy orchestrated from the highest levels," those individual acts of noncompliance were "simply insufficient to clear the policy-and-practice bar."  Id. at *6.  Indeed, the Court observed that much of the Complaint focused on officials who were then not even members of the State Department.  While statements concerning the President and his White House advisors "litter[ed] the pleadings," id. at *5, the Court explained that those actors were governed by the Presidential Records Act, see

44 U.S.C. § 2203, which precludes judicial review of their recordkeeping practices.  Pompeo, 2020 WL 1667638, at *5 (citing Armstrong, 924 F.2d at 291).

Count II fared no better.  The Court first acknowledged that Plaintiffs' allegations that the Department had failed to establish "effective controls" over its records program, "particularly with respect to the use of private phones and email accounts and encrypted messenger apps," was the type of challenge to the adequacy of Department policy that it could consider under the APA. Id. at *6 (quoting Compl., ¶ 78).  The claim still warranted dismissal, however, as Plaintiffs had neither sufficiently alleged "widespread" noncompliance with the policy, id. (quoting Compl., ¶ 78), nor adequately identified the "particular deficiencies" that rendered the agency's electronic-records policy inadequate.  Id. at *7 (quoting Judicial Watch, Inc. v. FBI, No. 18-2316, 2019 WL 4194501, at *9 (D.D.C. Sept. 4, 2019)).

Despite the Complaint's defects, the Court noted that Plaintiffs' briefing included allegations of more recent FRA violations by State Department officials.  Id.  It accordingly dismissed the Complaint without prejudice and invited Plaintiffs to take another stab at pleading. Id.

2.   *Amended Complaint*

Taking up this Court's invitation, Plaintiffs filed an Amended Complaint on April 17, 2020.  See ECF No. 21.  While this renewed pleading understandably recycles numerous assertions from the initial Complaint, it also advances new allegations regarding Defendants' noncompliance with the FRA's records-creation and -maintenance requirements.

The core of the Amended Complaint remains the alleged "shadow diplomacy" conducted by certain State Department officials aimed at furthering the President's personal interests in Ukraine.  Id., ¶¶ 38, 43–54.  Plaintiffs repeat the original Complaint's allegations that Sondland

directed American officials not to take notes during a call with the Ukrainian President, id., ¶ 44, and that Pompeo "listened in on" a different call between the Presidents of the United States and Ukraine that the White House attempted to conceal.  Id., ¶¶ 39, 48.  The Amended Complaint now attempts to clarify, though, that Pompeo played an "active and knowing role" in the "shadow diplomacy" and was "in the loop" regarding efforts to advance the President's personal interests.  Id., ¶¶ 48–52.  It also cites statements that officials in the "regular diplomatic channel were kept in the dark" about decisionmaking in the "irregular" channel, which included Sondland, then-Special Envoy Kurt Volker, former Energy Secretary Rick Perry, and President Trump's personal lawyer, Rudolph Giuliani.  Id., ¶¶ 45–47.

Shifting beyond Ukraine, the Amended Complaint points to other examples of alleged "off-the-books" diplomacy.  Id., ¶ 55.  For instance, it references a February 2020 meeting between Pompeo and Russian Foreign Minister Sergey Lavrov, which was not disclosed to the American press.  Id.  Plaintiffs likewise assert that Pompeo was "reportedly present" for at least two calls between President Trump and foreign heads of state.  Id., ¶ 56.  The Amended Complaint also repeats prior allegations regarding White House advisor Jared Kushner's meeting with the Saudi Crown Prince.  Id., ¶ 58.  Finally, Plaintiffs expand on their original Complaint's allegations of "widespread" use of personal phones and encrypted messaging applications at the State Department.  Compare id., ¶¶ 60–62, with Compl., ¶¶ 60–62.  They now contend that the Department "has not taken adequate steps to ensure that messages sent or received on . . . electronic platforms are preserved," Am. Compl., ¶ 63, and that the agency's recordkeeping guidelines inadequately address the creation of records when employees use non-governmental electronic-messaging applications and personal cell phones.  Id., ¶¶ 64, 66.

The Amended Complaint once again sets forth two counts.  First, deploying language nearly identical to their original Complaint, Plaintiffs contend that Defendants have violated the FRA by "establish[ing] and enforc[ing] a policy and practice of affirmatively electing not to create and preserve records adequately documenting" the Department's activities.  Id., ¶ 71. Count II, meanwhile, asserts that Defendants have "failed to enact adequate guidelines concerning the use of private phones and email accounts and non-governmental electronic messaging applications," thereby enabling "widespread [FRA] noncompliance by State Department employees."  Id., ¶¶ 78, 80.

On May 11, 2020 — several weeks after Plaintiffs filed their Amended Complaint — the State Department revised its written guidelines to incorporate preexisting directives regarding records creation and preservation on private, non-email electronic-messaging platforms.  See 5 FAM 444.1–444.2.  The amended policy instructs that individuals who use such electronic devices to conduct official business must export any records created thereon to a government account within a specified timeframe.  Id., 444.2(c).  Defendants now move to dismiss both amended counts.

## II.     Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  This standard governs the Court's consideration of Defendants' Motion under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Walker v. Jones, 733 F.2d 923, 925–26 (D.C. Cir. 1984).  The Court need not accept as

true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." Although "'detailed factual allegations'" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The standard to survive a motion to dismiss under Rule 12(b)(1) is less forgiving. Under this part of the Rule, Plaintiffs bear the burden of proving that the Court has subject-matter jurisdiction to hear their claims. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). The Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, a complaint's factual allegations "'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)).

## III.   Analysis

As a reminder, in order to survive Defendants' Motion to Dismiss, Plaintiffs must fall on the permitted side of a reasonably clear line. More specifically, they must allege that the State Department has established an "informal policy or practice of violating" the FRA's directives,

including its record-creation mandates.  Pompeo, 2020 WL 1667638, at *4; see also Citizens for
Responsibility & Ethics in Wash. v. DHS, 387 F. Supp. 3d 33, 53 (D.D.C. 2019) ("[Pruitt]
recognized . . . a challenge to the EPA's unofficial policy of refusing to create records.").  Mere
"isolated violations of the guidelines governing records creation," on the other hand, will not
suffice to state a valid claim.  Pompeo, 2020 WL 1667638, at *5 (first emphasis added).  The
Court now addresses whether the Amended Complaint winds up in the former or latter category.

A.  Count I

Count I asserts that Defendants have "established and enforce a policy and practice of
affirmatively electing not to create and preserve records" and of "direct[ing] other State
Department employees not to create and preserve records" in violation of the FRA and its
implementing regulations.  See Am. Compl., ¶¶ 71–72.  As previously mentioned, this is the
precise legal claim that the Court previously dismissed.  See Pompeo, 2020 WL 1667638, at *3,
5–6; Compl., ¶¶ 71–72 (asserting claim nearly verbatim).  The question, then, becomes whether
the new factual allegations contained in Plaintiffs' Amended Complaint do what their original
pleading could not — namely, allege sufficiently that the State Department has established a
policy or practice of violating the FRA's record-creation requirements.  According to
Defendants, the revised Count I "once more set[s] forth an impermissible compliance-based
claim rather than a challenge to a recordkeeping guideline or directive."  ECF No. 23-1 (Def.
Mot.) at 16.  Plaintiffs rejoin that their Amended Complaint identifies a "challenged policy and
practice" and provides factual support for its existence, including "numerous examples" of "off-
the-books shadow diplomacy in which Defendants have engaged in pursuit of President Trump's
personal and political interests."  ECF No. 25 (Pl. Opp.) at 9.

Once again, Defendants have the better of this argument.  The Amended Complaint continues to describe various isolated violations of Department guidelines governing records creation, rather than an agency-wide policy running afoul of the FRA.  See Pompeo, 2020 WL 1667638, at *5.  Much as before, the core of Plaintiffs' claim is an "Administration-wide recordkeeping failure concerning an aspect of its Ukraine policy," id., highlighted by the State Department's alleged "policy and practice" of not creating records adequately documenting its activities with respect to that diplomatic scheme.  See Am. Compl., ¶ 71.  As this Court has previously made clear, however, "Plaintiffs cannot transform an allegedly brazen compliance violation into a 'policy or practice' claim simply by slapping the 'policy or practice' label on it." Pompeo, 2020 WL 1667638, at *5; see also Competitive Enter. Inst., 67 F. Supp. 3d at 33 ("[Plaintiff] cannot challenge EPA's decision to destroy text messages by casting its claim as a challenge to an illusory record-keeping policy.  While the form of [plaintiff's] claim sounds in a cognizable APA claim, the substance of its allegations constitutes a challenge to EPA's records disposal decisions.").

Striving to distinguish their earlier defeat and establish the existence of such an informal agency policy, Plaintiffs argue that their "Amended Complaint centers on the conduct of State Department officials, including Secretary Pompeo, who have repeatedly refused to create records of their diplomatic actions and decisions in direct contravention of the FRA."  Pl. Opp. at 12. Such contention comprises several threads, each of which the Court addresses.

First, Plaintiffs devote particular attention to Pompeo, attempting to place him "squarely in the middle" of the Ukraine-related "shadow diplomacy" by alleging that he played an "active and knowing role" in the scheme.  See Am. Compl., ¶¶ 48–52.  Specifically, they rehash old and advance new assertions that: 1) Pompeo listened in on a call between Presidents Trump and

12

Zelensky that the White House attempted to conceal, id., ¶ 48; 2) Ambassador Sondland sent an email (itself a written record) that included Pompeo in its list of recipients, to which Sondland "pointed" as evidence that "[e]veryone was in the loop," id., ¶ 50 (alteration in original) (citation omitted); 3) Sondland requested that Pompeo help coordinate a meeting between Trump and Zelensky, id., ¶ 51; and 4) the then-National Security Advisor encouraged an Ambassador to express concerns to Pompeo regarding Ukrainian diplomatic policy.  Id., ¶ 52.  These allegations, however, do not yield a plausible inference that the Secretary himself orchestrated the underground diplomatic channel, let alone that he imposed a top-down, unwritten, "agency-wide policy" to violate the FRA's mandates in furtherance of the effort.  Pompeo, 2020 WL 1667638, at *5.  Indeed, the allegations identify no inappropriate action by Pompeo in connection with State Department records management whatsoever.

Looking beyond Pompeo, Plaintiffs also point to the participation of several other Department officials in the alleged shadow-diplomacy effort.  See Am. Compl., ¶¶ 44–47, 60. To be sure, their assertions (and what the mainstream press has reported) of an "irregular, informal channel of U.S. policy-making" with respect to Ukraine are troubling.  Id., ¶ 45 (citation omitted).  Indeed, President Trump was impeached over his Ukrainian interactions. Once again, however, Plaintiffs' allegations simply amount to a claim that various diplomats failed to comply with Department records policy in a "specific factual context[]," Competitive Enter. Inst., 67 F. Supp. 3d at 33, rather than "systemic non-compliance" or a "policy orchestrated from the highest levels."  Pompeo, 2020 WL 1667638, at *6.  In addition, the reality that the three individuals Plaintiffs identify as principally involved in the protested scheme — Sondland, Volker, and Ambassador William Taylor — have departed the State Department renders increasingly speculative Plaintiffs' insistence that the Department currently maintains an

unwritten, agency-wide policy contrary to the FRA.  See Pl. Opp. at 18; Def. Mot. at 18; cf. Wheeler, 352 F. Supp. 3d at 9 (granting motion to dismiss where complaint's allegations revolved around conduct of former EPA Administrator, as complaint did not support reasonable inference that challenged "policy or practice would continue, or exist apart from, the actions of" departed Administrator).  Even apart from an alleged policy not to create or preserve records, Plaintiffs struggle at times to plead individual FRA violations.  For instance, they point to one Ambassador's instruction for a colleague to "[c]all [him]" as evidence that their Ukraine-related communications were intended to be off the record.  See Am. Compl., ¶ 53; see also id., ¶ 54 (similar instruction).  But nothing in the FRA forbids communication via telephone, and there are many reasons why an individual might prefer to converse verbally that have nothing to do with avoiding documentation.

Third, Plaintiffs allege additional instances of "shadow, off-the-books, diplomacy with other countries," id., ¶ 55, but none ultimately bears fruit.  Plaintiffs repeat their original Complaint's assertion that the U.S. embassy in Riyadh was "largely left in the dark" on the substance of Jared Kushner's meeting with the Crown Prince of Saudi Arabia.  Id., ¶ 58 (citation omitted).  As the Court has already explained, however, this allegation "does not involve the State Department's recordkeeping practices," as the fact that the Department was "left in the dark" suggests it never had the opportunity to create any records.  Pompeo, 2020 WL 1667638, at *5.  Focusing again on Pompeo, Plaintiffs next highlight a February 2020 meeting between the Secretary and Russian Foreign Minister Sergey Lavrov.  See Am. Compl., ¶ 55.  Yet all they allege is that the meeting was not disclosed to the press, not that Defendants neglected to adequately document it or otherwise committed any FRA violation.  Id.  In addition, Plaintiffs claim that Pompeo was "reportedly present" for at least two other calls between Trump and

14

foreign leaders, which did not yield any public transcripts.  Id., ¶ 56.  Even assuming Plaintiffs are correct that the State Department has an "independent duty" under the FRA to create its own records of calls encompassed by the Presidential Records Act, id., ¶ 57, nowhere do Plaintiffs allege facts sufficient to create a "reasonable inference" that the Department did not create such records (e.g., beyond transcripts), let alone maintained an unstated policy not to do so.  Iqbal, 556 U.S. at 678 (explaining that complaint pleading "facts that are 'merely consistent with' a defendant's liability" is insufficient) (quoting Twombly, 550 U.S. at 557).

Neither can Plaintiffs surmount the pleading hurdle simply by alleging unspecified "information and belief" that the Department failed to create records "on multiple occasions." Am. Compl., ¶¶ 57, 59.  It is true that Plaintiffs may plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  Pl. Opp. at 15–16 (quoting Evangelou v. Dist. of Columbia, 901 F. Supp. 2d 159, 170 (D.D.C 2012)) (emphasis omitted).  As the Court has made clear, however, the factual information pled does not enable the Court to "draw" Plaintiffs' desired "reasonable inference," Iqbal, 556 U.S. at 678, much less that Defendants have adopted an agency-wide policy not to create or preserve adequate records.  Plaintiffs' two cited cases — neither of which involved the FRA — featured allegations far afield from those present here.  See Evangelou, 901 F. Supp. 2d at 170 (plaintiff pled specific facts that yielded inference regarding former employer's motivation for firing him); Bancroft Global Dev. v. United States, 330 F. Supp. 3d 82, 102 (D.D.C. 2018) (plaintiff identified precise individual to whom unlawful disclosure was allegedly made, along with approximate timeframe).

At the end of the day, Plaintiffs' allegations remain a "far cry from those found sufficient to state a policy-and-practice claim in Pruitt," Pompeo, 2020 WL 1667638, at *6, where the EPA Administrator allegedly verbally instructed agency staff to refrain from creating written records about substantive matters, prohibited notetaking and cell-phone use during meetings, avoided sending emails that would create a record, and used phones other than his own to make calls in order to avoid them appearing on his call log. Pruitt, 319 F. Supp. 3d at 255. Even after an Amended Complaint, the closest Plaintiffs continue to come to any such top-down, unwritten agency policy is their claim that a (now-former) Ambassador instructed participants on a call between State Department officials and President Zelensky not to take notes, as part of a larger effort to shield diplomatic efforts regarding Ukraine from public view. See Am. Compl., ¶ 44. "That is simply insufficient to clear the policy-and-practice bar," especially when the Ambassador at issue — Gordon Sondland — no longer works at the State Department. Pompeo, 2020 WL 1667638, at *6.

In sum, because Plaintiffs challenge the Department's "deficient compliance with [the FRA] with regards to some of the records the agency creates," rather than a "policy, official or unofficial, setting agency-wide compliance with the FRA," Count I once again cannot advance past the pleading stage. DHS, 387 F. Supp. 3d at 53 (emphasis added); see also Competitive Enter. Inst., 67 F. Supp. 3d at 33 (explaining that "FRA prohibits any judicial assessment of agency compliance in specific factual contexts by establishing a detailed enforcement scheme for alleged violations") (emphasis omitted).

B.  Count II

Count II similarly goes nowhere, albeit for different reasons. Here, Plaintiffs assert that Defendants have not established "effective controls" over records created by Department

employees when using private phones and third-party electronic-messaging applications.  See Am. Compl., ¶¶ 78–80.  According to their Amended Complaint, by "fail[ing] to enact adequate guidelines concerning the use" of such non-governmental electronic applications, the Department "effectively delegate[s] to each agency employee the apparently unchecked discretion" to create and preserve (or not) adequate records.  Id., ¶ 78.

Count II therefore contests the adequacy of the State Department's policy — in the form of its written guidelines — regarding "the use of private phones and email accounts and non-governmental electronic messaging applications."  Id.  As the Court has already explained, this "is the sort of claim the D.C. Circuit has determined courts can consider via the APA."  Pompeo, 2020 WL 1667638, at *6; see also Judicial Watch, 2019 WL 4194501, at *6 ("Plaintiff challenges the adequacy of Defendant's official Policy Guidelines with respect to electronic records other than email.  This is just the sort of reviewable challenge to an agency's recordkeeping guidelines that Armstrong permits.").

Critically, however, the Department's recently amended recordkeeping policies now appear to remedy the precise defects Plaintiffs have identified.  Several weeks after they filed their Amended Complaint, the agency revised its written guidelines to incorporate preexisting directives focused on non-email electronic-messaging platforms.  See 5 FAM 444.1 (now covering, e.g., text messages or other external-messaging applications available through a mobile device, regardless of whether they reside on agency networks).  When individuals use such electronic-messaging applications to conduct official business, they must copy their official government accounts or forward a copy of the work-related communication to such account within twenty days.  Id., 444.2(b), (c).  Preexisting guidelines already provided for the same with respect to personal email accounts, id., 443.4(b), (d), and the amended policy generally prohibits

employees from conducting official business on applications that do not allow the communications to be easily exported and archived.  Id., 444.2(a).  Plaintiffs do not appear to dispute that this revised policy is fully consistent with the FRA's requirements regarding the creation and preservation of records sent through private phones or electronic-messaging applications.  See Pl. Opp. at 25, 31.  After all, the FRA expressly contemplates use of such devices and applications so long as employees copy their official account when creating records or forward them to an official account within twenty days.  See 44 U.S.C. § 2911(a), (c).

While no doubt welcome news in a general sense to Plaintiffs, this revision to the Department's recordkeeping policies undermines the viability of their claim.  "The promulgation of a superseding policy or program can have the power to moot a challenge to the old one." Wheeler, 352 F. Supp. 3d at 11; see also Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006) (holding that expiration of policy mooted challenge to that policy).  Here, Plaintiffs alleged that the Department had "failed to enact adequate guidelines concerning the use of private phones and email accounts and non-governmental electronic messaging applications."  Am. Compl., ¶ 78; see also id., ¶ 80 (alleging "absence of guidance . . . in the State Department's rules and policies on the use of personal devices, non-governmental electronic messaging applications, and the retention of federal records created using such applications"); id., ¶¶ 64, 66 (similar). Because "the revised policy corrects the fundamental defect in the old one" (as all appear to agree), the Court finds that Count II is moot.  Wheeler, 352 F. Supp. 3d at 12.

Plaintiffs do not directly resist this reasoning.  Instead, their Opposition attempts to refashion Count II into a far more general challenge to the Department's entire "recordkeeping program or controls, not just [its] written policies" regarding the use of personal devices and electronic-messaging applications.  See Pl. Opp. at 26.  Specifically, Plaintiffs now argue that the

various allegations supporting Count I generate a plausible inference that the Department's "records management program and controls . . . fall short of what the FRA requires." Id. at 25, 28–30 (emphasis omitted).  But that is not the claim they pled.  Although their Amended Complaint contends that Defendants "failed to establish and maintain an adequate program to preserve federal records" and did not establish "effective controls" therefor, see Am. Compl., ¶¶ 76, 79 (capitalization altered), the count taken as a whole makes clear that such statements arise in the limited context of contesting the adequacy of the Department's recordkeeping guidelines surrounding personal devices and electronic-messaging applications.

As the Court previously explained, the original Count II similarly contested the adequacy of the Department's "guidelines pertaining to modern technology." Pompeo, 2020 WL 1667638, at *6.  Indeed, Plaintiffs themselves repeatedly described that prior claim as challenging the Department's failure to maintain adequate recordkeeping policies surrounding use of "private and encrypted methods of communication." ECF No. 17 (Pl. Opp. to First Mot. to Dismiss) at 26, 28, 30.  Fully aware of this history, Plaintiffs made but a single substantive alteration to the count in their Amended Complaint, clarifying further that they challenged the "absence of guidance" regarding records creation for the use of "personal devices" and "non-governmental electronic messaging applications." Am. Compl., ¶ 80.  That addition, presumably in response to the Court's request for more precise allegations as to the specific shortcomings of the Department's policies, Pompeo, 2020 WL 1667638, at *7, only reinforces the conclusion that Count II challenges a particular deficiency (that has now been cured) in the agency's recordkeeping guidelines, rather than the far broader claim Plaintiffs advance in their briefing.  Likely realizing their quandary in light of the Department's amended guidelines, Plaintiffs decline in their present Opposition even to mention the Amended Complaint's allegations with

respect to the Department's electronic-messaging recordkeeping policies, instead fixating entirely on their newly rearticulated formulation.  See Pl. Opp. at 24–31.  That effort, of course, brings them no success, as "[i]t is axiomatic . . . that a party may not amend his complaint through an opposition brief."  Sai v. Transp. Sec. Admin., 326 F.R.D. 31, 33 (D.D.C. 2018) (quoting Singh v. Dist. of Columbia, 55 F. Supp. 3d 55, 70 (D.D.C. 2014)).

    In any event, even if Plaintiffs had properly alleged that the State Department was not maintaining an adequate "recordkeeping program or controls" beyond its guidelines regarding use of modern technology, see Pl. Opp. at 26, such claim would not pass the pleading hurdle. Although they vigorously assert that the Department's "records management program and controls . . . fall short of what the FRA requires," id. at 25, Plaintiffs never specify any FRA-mandated "controls" that the Department has not already implemented.  See Wheeler, 352 F. Supp. 3d at 12 (rejecting claim that agency established inadequate records-management program where plaintiffs "do not point to any specific requirement imposed by the FRA that [agency] lacks"); Judicial Watch, 2019 WL 4194501, at *9 (rejecting claim that lacked "precise factual allegations that highlight which particular deficiencies make the challenge to [agency's] policy inadequate").  Nor can Plaintiffs simply recycle the same allegations of FRA noncompliance that the Court deemed insufficient in Count I — along with conclusory assertions of widespread noncompliance with recordkeeping obligations when using private platforms, see Am. Compl., ¶¶ 62–64 — were the Court to characterize Count II as a distinct, sweeping challenge to the entirety of the Department's records management.  See DHS, 387 F. Supp. 3d at 54 (dismissing claim alleging agency's "failure to establish and maintain a sufficient agency-wide records management program in compliance with the FRA and its implementing regulations" as "broad programmatic attack," rather than challenge to particular agency action, that court "simply

cannot consider under the APA") (internal quotations and citations omitted).  Count II, consequently, proceeds no further.

## IV.      Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss.  A separate Order so stating will issue this day.


_/s/ James E. Boasberg_
JAMES E. BOASBERG
United States District Judge

Date:  September 25, 2020